# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIANNE T., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 19 C 6171 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Marianne T. seeks judicial review of the final decision of the Commissioner of Social Security finding her ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have moved for summary judgment. For the following reasons, Marianne's motion [12] is granted in part and denied in part, the Commissioner's motion [18] is denied, and the ALJ's decision is reversed and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## BACKGROUND

Marianne was working as an administrator when she was laid off in 2011. (R. 42-43). By that point, Marianne was struggling to meet the demands of her job, due to the necessary walking, lifting, and computer work. *Id.* at 42. By 2016, Marianne was no longer able to complete household tasks like cooking or doing dishes. *Id.* at 43-44. Marianne also started misplacing items around the house due to her confusion. *Id.* at 43-44. Marianne's contemporaneous medical records show that she was struggling with various conditions, including fibromyalgia, hypertension, degenerative disc disease, asthma, depression, and chronic pain. *Id.* at 343, 344, 345, 366, 415, 504. Marianne's treatment for those ailments

has included office visits, physical therapy, Kenalog injections, and prescription medications, including Lyrica, Hydrocodone, Gabapentin, Amlodipine, Cymbalta, Tegretol, and Cyclobenzaprine. *See, e.g.*, *id.* at 233, 366, 370, 392, 441-43.

Marianne filed for a period of disability and disability insurance benefits on November 23, 2016, alleging disability beginning September 17, 2016. (R. 198-99). Marianne's claim was initially denied on March 23, 2017 and upon reconsideration on June 8, 2017. *Id.* at 110, 121. Upon Marianne's written request, she appeared and testified at a hearing held on July 12, 2018 before ALJ Jennifer Smiley. *Id.* at 32-58. At the hearing, the ALJ heard testimony from Marianne and a vocational expert, Ms. Tucker. *Id.* On September 28, 2018, the ALJ issued a decision denying Marianne's application for disability benefits. (R. 13-26). The opinion followed the required five-step evaluation process. 20 C.F.R. § 404.1520. At step one, the ALJ found that Marianne had not engaged in substantial gainful activity from September 17, 2016, the alleged onset date, through December 31, 2016, the last insured date. *Id.* at 15. At step two, the ALJ found that Marianne had the severe impairments of fibromyalgia, degenerative disc disease, obesity, asthma, and hypertension. *Id*. At step three, the ALJ determined that Marianne did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). *Id*. at 18.

The ALJ then concluded that Marianne retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR § 404.1567(a), except: "the claimant required the use of a cane for ambulation. The claimant could only occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. The claimant could

occasionally balance, stoop, kneel, crouch and crawl. The claimant could have no more than occasional exposure to workplace hazards, including unprotected heights, moving mechanical parts, and operating a motor vehicle, and to pulmonary irritants including dust, fumes, and odors." (R. 19). The ALJ next determined, at step four, that Marianne was not capable of performing her past relevant work. *Id.* at 24. At step five, the ALJ determined that Marianne had acquired work skills from past relevant work that were transferable to occupations with jobs existing in significant numbers in the national economy. *Id.* at 25. Because of this determination, the ALJ found that Marianne was not disabled. *Id*. The Appeals Council denied Marianne's request for review on July 15, 2019, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-3; *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).

## DISCUSSION

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a sequential five-step inquiry. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled." *Zalewski*, 760 F.2d at 162 n.2.

3

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). In reviewing an ALJ's decision, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal quotation marks and citation omitted). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge from the evidence to her conclusion[s]." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation and quotations omitted); *see also Fisher v. Berryhill*, 760 F. App'x 471, 476 (7th Cir. 2019). Moreover, when the ALJ's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Marianne argues that the ALJ erred in discounting the opinion of Marianne's treating physician, Dr. Campbell. Marianne further avers that the ALJ erred in crafting a "middle ground" RFC that was not based on a medical opinion. The Court agrees.[1] Accordingly, for the reasons discussed below, the ALJ's decision must be reversed.

**A.      Discounting of Dr. Campbell's Opinion**

Marianne argues that the ALJ erred in her evaluation of Dr. Campbell's opinion. Under the regulation in effect at the time of Marianne's application, a treating physician's opinion regarding the nature and severity of an impairment is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic

---

[1] Because the Court remands on this basis, the Court does not address Marianne's other arguments.

4

techniques and is not inconsistent with [ ] other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). "More weight is given to the opinion[s] of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citation omitted). An ALJ must offer "good reasons" for discounting the opinion of a treating physician. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (citations omitted). And an ALJ "must not substitute [her] own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citing *Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir.1996)).

In June 2018, Dr. William Campbell, Marianne's primary care physician, completed a questionnaire regarding Marianne's RFC. (R. 522, 532-36). In response to a question regarding Marianne's "diagnoses, prognosis, course of treatment, and response, as of December 31, 2016," Dr. Campbell indicated that Marianne had been diagnosed with fibromyalgia and lumbar degenerative joint disease "with moderate left foraminal stasis at levels L2-3, L4-5, L5-S1." *Id.* at 532. Dr. Campbell further stated that Marianne had been treated with "injections, [physical therapy], pain medication, as well as seeing [a] [p]ain specialist [and] [r]heumatologist," and that her "[o]verall progress is poor." *Id.* In response to a question about Marianne's ability to sit for more than 30 minutes at a time as of December 31, 2016, Dr. Campbell provided the following answer: "No. She is unable to sit in one position for any period of time without pain in [the] low back radiating to feet as well as neck pain radiating in arms." *Id.* at 533. In terms of Marianne's attention and concentration as of December 31, 2016, Dr. Campbell opined that Marianne's impairments would result in an inability to sustain attention and concentration for more than 80% of an

5

8-hour workday. *Id.* at 534. Dr. Campbell explained that Marianne is "constantly in pain that does not allow her to concentrate on tasks at hand," and that Marianne "has difficulty focusing while taking her medication." *Id.* Dr. Campbell similarly opined that Marianne could not stand for long periods of time, perform numerous activities of daily living, or sustain a job requiring fine or gross manipulation. *Id.* at 533-36. Dr. Campbell eventually concluded that, given Marianne's pain and weakness in performing activities of daily living, "[i]t is unreasonable to believe she could work a job[.]" *Id.* at 536.

The ALJ in this case assigned little weight Dr. Campbell's opinion, discounting it for two reasons. (R. 23). First, the ALJ took issue with the use of present tense language in Dr. Campbell's opinion: "Although the form requests information 'as of December 31, 2016,' Dr. Campbell's answers are all provided in the present tense, leading to a reasonable inference that he was addressing the claimant's current level of functioning as of June 2018, when he completed the form." *Id.* According to the ALJ, Dr. Campbell did not "provide any specific discussion of the claimant's functioning during any period prior to her date last insured of December 31, 2016." *Id.* Second, the ALJ reasoned that, even if Dr. Campbell's opinion did concern the correct time period, the record documented "minimal objective clinical findings and illustrate[d] a clinical picture of stability on a conservative regimen of medications during that time period prior to the claimant's date last insured," which "fail[ed] to support the extreme limitations opined." *Id.*

The Court finds that the ALJ's two reasons for discounting Dr. Campbell's opinion fail to meet the "good reason" standard in this case. *Scott*, 647 F.3d at 739. To begin, the ALJ's conclusion that Dr. Campbell's use of present tense language means that his opinion concerned the wrong time period is needlessly speculative and off base. Dr. Campbell

6

specifically responded to questions directed at the correct time period. To the extent the ALJ was confused or concerned about the tense of Dr. Campbell's opinion, the ALJ had many tools in her arsenal to deal with the ambiguity, including recontacting Dr. Campbell. *See Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004); *Norris v. Astrue*, 776 F. Supp. 2d 616, 630 (N.D. Ill. 2011). Granted, the ALJ "need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(e)). However, here, the evidence is inadequate, considering the dearth of opinion evidence and the unique 3-month relevant time period that this case presents.[2] As a result, the ALJ should have recontacted Dr. Campbell instead of assuming that his opinion pertained to the wrong period. The ALJ was moreover wrong in stating that Dr. Campbell "does not provide any specific discussion of the claimant's functioning during any period prior to her date last insured[.]" (R. 23). Dr. Campbell discussed the specifics of Marianne's degenerative joint disease and the pain associated with her fibromyalgia, as well as her use of injections and pain medication to treat those issues, all of which occurred before Marianne's date of last insured. *See, e.g.*, *id.* at 343, 345, 355, 364, 366, 532. Dr. Campbell also discussed how Marianne's pain and medication affected her ability to concentrate, issues Marianne complained of prior to the date of last insured. *Id.* at 334-37.

The ALJ's second reason for discounting Dr. Campbell's opinion fares no better. The ALJ found Dr. Campbell's opinion was not supported by the medical record in light

---

[2] Upon initial consideration, both state agency physicians opined that there was insufficient evidence to formulate an RFC. (R. 106-07). Upon reconsideration, a state agency psychologist opined that there was insufficient evidence to formulate a mental RFC, while another state agency physician opined on reconsideration that Marianne was physically capable of work at the medium level. *Id.* at 116-19. No physician in the record provided a mental RFC in this case.

of "minimal objective clinical findings" and evidence of "a conservative regimen of medications." (R. 23). Yet the ALJ cannot substitute her own lay opinion regarding the aggressiveness of Marianne's treatment for Dr. Campbell's opinion without marshaling adequate support in the record. *See Clifford*, 227 F.3d at 870. The ALJ failed to do so here. No medical source opined that Marianne's treatment was merely conservative, and even if one had, the ALJ failed to suggest what more aggressive treatment was available for Marianne's fibromyalgia. The ALJ's characterization of Marianne's treatment as conservative therefore "misapprehends the medical options available for treating fibromyalgia. Because there is no cure for fibromyalgia, treatment options are constrained to nonnarcotic pain relievers, exercise, and stress-reduction measures." *Lanzi-Bland v. Berryhill*, No. 16 C 8856, 2017 WL 4797529, at *7 (N.D. Ill. Oct. 24, 2017). *See Thorn v. Berryhill*, No. 15 CV 50248, 2017 WL 748596, at *5 (N.D. Ill. Feb. 27, 2017). Along those same lines, the ALJ's discounting of Dr. Campbell's opinion based on some "minimal objective clinical findings"—summarized earlier in the ALJ's decision—misunderstands fibromyalgia too, as the symptoms of fibromyalgia will wax and wane; people with fibromyalgia have bad days and good days. *See* SSR 12-2p, 2012 WL 3104869, at *6. *See also Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) (remanding where the ALJ "misunderstood the nature" of the claimant's fibromyalgia pain); *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (fibromyalgia cannot be measured with objective tests); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (reversing where the ALJ's decision reflected a "pervasive misunderstanding" of fibromyalgia). The Court finds that the ALJ failed to provide a good reason for discounting Dr. Campbell's opinion in this case. On remand, the ALJ shall reweigh the opinion of Dr. Campbell and recontact

him as necessary. If the ALJ decides to discount Dr. Campbell's opinion again, she shall provide good reasons for doing so.

**B.     "Middle Ground" RFC**

The ALJ did not adopt any medical expert's RFC opinion in this case. Instead, the ALJ rejected Dr. Campbell's opinion and afforded only "some weight" to the opinion of a state agency consultant who opined that Marianne could perform work at the medium level. (R. 23). Ultimately, the ALJ constructed a sedentary RFC with limitations making it more restrictive than the state agency physician's but less restrictive than Dr. Campbell's opinion. *Id.* at 19. Marianne argues that the ALJ therefore improperly erred by crafting a middle ground RFC that was not based on a medical opinion or Marianne's testimony about her limitations. Although "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians," *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citation omitted), an ALJ "cannot reject all the relevant medical RFC opinions and then construct[ ] a middle ground and c[o]me up with her own physical RFC assessment without logically connecting the evidence to the RFC findings." *Mark J. v. Saul*, No. 18 C 8479, 2020 WL 374676, at *5 (N.D. Ill. Jan. 23, 2020) (internal quotation marks omitted) (quoting *Bailey v. Barnhart*, 473 F.Supp.2d 822, 838 (N.D. Ill. 2006)).

Here, the ALJ failed to logically connect the evidence to her middle ground physical RFC findings. In particular, the ALJ failed to explain how Marianne would be able to sit for up to 6 hours a day, and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. *See* SSR 83-10, 1983 WL 31251 at *5. The ALJ provided the conclusory statement that, "[i]n light of the claimant's extreme obesity, I further restrict

9

the claimant to only occasional climbing of ramps and stairs; never climbing ladders, ropes, and scaffolds; and occasional balancing, stooping, kneeling, crouching and crawling," (R. 22), but failed to cite to any records in support of that statement or elaborate on how Marianne could be expected climb ramps and stairs, balance, stoop, kneel, crouch, and crawl for up to one third of a workday, given Marianne's extreme obesity, degenerative disc disease, and fibromyalgia. *See* SSR 83-10, 1983 WL 31251 at *5. The ALJ's failure to refer to records regarding Marianne's functional capabilities is not altogether surprising, given the lack of evidence regarding Marianne's functional capabilities during the narrow three-month time period at issue in this case. All in all, the ALJ failed to construct the requisite accurate and logical bridge from the evidence to the ALJ's "middle ground" physical RFC.

In a similar way, the ALJ constructed a mental RFC with no medical opinion support. That is, the state agency physicians who reviewed Marianne's file determined that there was insufficient evidence regarding Marianne's mental RFC. (R. 107, 116). So, after the ALJ effectively dismissed Dr. Campbell's opinion regarding Marianne's concentration, there was no other opinion evidence regarding Marianne's mental functioning from the relevant time period. The ALJ nevertheless concluded that Marianne's anxiety and depression were non-severe, that she had no more than a mild limitation in concentrating, persisting, or maintaining pace, and that she did not need any mental limitations in her RFC. *Id.* at 16, 17, 19. Again, it is the ALJ's duty to formulate the RFC, *see Schmidt*, 496 F.3d at 845; 20 C.F.R. §§ 404.1545, 404.1546, so the lack of medical opinion evidence, alone, is not fatal. The problem here is that the ALJ failed to support her mental RFC conclusions with evidence in the record. For instance, the ALJ

10

incorrectly concluded that "the medical evidence of record prior to her date last insured fails to mention any difficulty with concentrating," (R. 17), when the record actually showed that Marianne was suffering from depression and concentration issues prior to her date of last insured. *See, e.g.*, *id*. at 17, 334-37, 366, 368, 382. The ALJ dismissed Marianne's mental health complaints because Marianne was reported to be oriented to person, place, and time during office visits. *Id.* at 22. But an ALJ "may not 'play doctor' by using [her] own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012) (citations omitted). And while it was Marianne's "burden to present medical evidence supporting her claim of disability," *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (citations omitted), if there are gaps in the record, "it [i]s the ALJ's responsibility to recognize the need for further medical evaluations . . . before making her residual functional capacity and disability determinations." *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (citations omitted). Here, as with the physical RFC, there simply was not enough evidence in the record to support a "middle ground" mental RFC for the three-month timeframe at issue in this case. At the same time, clinical diagnoses from before and after the relevant time period illustrate serious mental health issues that should have been evaluated by a medical expert. The ALJ therefore erred by constructing a middle ground RFC without the requisite logical and accurate bridge. On remand, given the combination of conditions and narrow timeframe in Marianne's case, the ALJ should consider calling a medical expert to opine as to Marianne's functional capabilities during the relevant time period.

11

## **CONCLUSION**

For these reasons, Marianne's motion for summary judgment [12] is granted in part and denied in part, and the Commissioner's motion for summary judgment [18] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: March 22, 2021

                                                Sunil R. Harjani
                                                United States Magistrate Judge